UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Daphne S.,[1] | Case No. 2:24-cv-00278-BNW |
| Plaintiff, | **ORDER** |
| v. | |
| Martin O'Malley, | |
| Defendant. | |

This case involves review of an administrative action by the Commissioner of Social Security partially denying Plaintiff's application for benefits under Title XVI of the Social Security Act. The Court reviewed Plaintiff's opening brief, in which she asks this Court to reverse the Commissioner's decision or, in the alternative, remand for further proceedings. ECF No. 11. The Commissioner opposed, requesting that this Court affirm its decision, or in the alternative, remand. ECF No. 13. Plaintiff did not file a reply. For the reasons discussed below, the Court grants in part and denies in part Plaintiff's motion and remands for further proceedings.

**I.  BACKGROUND**

Plaintiff filed for supplemental security income under Title XVI in 2019. Administrative Record ("AR") 433. The Commissioner denied Plaintiff's application initially and upon reconsideration. AR 139, 174. Plaintiff attended a hearing before an Administrative Law Judge ("ALJ") in April of 2021, and, upon request for a de novo hearing, she attended another hearing in early 2023. AR 16, 48, 259. The ALJ issued a partially favorable decision in which he found that Plaintiff was not disabled prior to December 8, 2022, but became disabled on that date. AR 36. The Appeal's Council declined to review this decision. AR 1. Consequently, Plaintiff appealed to this Court.

---

[1] In the interest of privacy, this opinion only uses the first name and last initial of the nongovernmental party.

## II.   STANDARD OF REVIEW

Administrative decisions in Social Security disability-benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See id.*; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the Court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F. 3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence supports more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*

*v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, the issue before the Court is not whether the Commissioner could have reasonably reached a different conclusion, but whether the final decision is supported by substantial evidence. *Burch*, 400 F.3d at 679. It is incumbent on the ALJ to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Id.* The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

**A. Disability evaluation process and the ALJ decision**

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual also must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in substantial gainful

activity, the ALJ will make a finding of non-disability. If the individual is not engaged in substantial gainful activity, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If the individual does not have a severe medically determinable impairment or combination of impairments, then the ALJ makes a finding of non-disability. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement, then the ALJ makes a finding of disability. *Id.* § 404.1520(d). Otherwise, the analysis proceeds to step four.

However, before moving to step four, the ALJ must first determine the individual's residual functioning capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See id.* § 404.1560; *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1545. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work performed either as the individual actually performed it or as it is generally performed in the national

4

economy within the last 15 years. The work also must have lasted long enough for the individual to learn the job and to have performed an substantial gainful activity. If the individual has the RFC to perform her past work, then the ALJ makes a finding of non-disability. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If she can do other work, then the ALJ makes a finding of non-disability. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Bowen v. Yuckert*, 482 U.S. 137, 141–42 (1987).

*Here*, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). AR 19–36.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 28, 2019, the amended onset date. AR 20.

At step two, the ALJ concluded that Plaintiff had the following severe impairments: cerebral aneurysm without rupture; status post craniotomy; degenerative disc disease; and carpel tunnel syndrome of the left upper extremity. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 24.

Before moving to step four, the ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR §§ 404.1567(b), 416.967(b) except that:

> she is prohibited from climbing ladders, ropes, or scaffoldings; she is limited to occasional climbing of ramps or stairs; and occasional balancing, stooping, kneeling, crouching, or crawling; she needs work that does not require rapid or frequent flexion or extension of the neck; she is limited to occasional overhead reaching with her left non-

5

dominant upper extremity; she is limited to frequent handling and fingering with her left upper extremity; she needs to avoid concentrated exposure to extreme heat and cold; she needs to avoid concentrated exposure to excessive noise and bright lights outside of a normal office setting; she needs to avoid concentrated exposure to excessive vibration; she needs to avoid all exposure to hazardous machinery and unprotected heights; she is able to understand, remember and carry out simple instructions; she can use judgment to make simple work related decisions; she cannot perform work requiring specific rate production, such as assembly line work, or work that requires hourly quotas; and she is limited to only occasional changes in in routine work setting.

AR 25.

At step four, the ALJ found that Plaintiff was incapable of performing PRW. AR 34.

At step five, the ALJ made two findings. First, he found that, beginning on December 8, 2022, the date the Plaintiff's age category changed, Medical-Vocational Rule 202.06 mandated a finding of disabled. AR 36. Second, the ALJ found that, prior to December 8, 2022, there were jobs that existed in significant number in the national economy that Plaintiff could perform given her age, education, work experience, and RFC. AR 35–36. The ALJ concluded that, prior to December 8, 2022, a finding of "not disabled" was appropriate under the above framework. *Id.*

### III.   ANALYSIS

#### A. The ALJ's finding that Plaintiff could perform light work was supported by substantial evidence.

Plaintiff generally argues that the ALJ's finding that she could perform light work with limitations was not supported by substantial evidence. ECF No. 11 at 6. First, Plaintiff argues that the ALJ improperly interpreted raw medical data and relied on his own interpretation of medical evidence in reaching this finding. *Id.* at 6–7. Second, Plaintiff argues that the ALJ did not provide meaningful analysis as to why he rejected the opinions of the state-agency physicians, Drs. Pak and Nasrabadi, who found that Plaintiff was limited to sedentary work. *Id.* at 7. Plaintiff further notes that the state-agency physicians' opinions were consistent with the opinion of treating physician, Dr. Wu. *Id.* at 8.

The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff could perform light work with certain limitations. ECF No. 13 at 7–15. First, the Commissioner argued that the ALJ did not err in addressing the medical evidence because he is

6

1  allowed to resolve ambiguities in such evidence. *Id.* at 14. Second, the Commissioner argued that
2  the ALJ reasonably determined that the opinions of Drs. Pak, Nasrabadi, and Wu were neither
3  supported nor consistent. *Id.* at 9–15. Lastly, the Commissioner added that the evidence
4  undermined Plaintiff's allegations that her impairments prevented her from light work. *Id.* at 7–
5  8.[2]

### a. The ALJ did not improperly interpret raw medical data.

"In formulating an RFC, an ALJ cannot interpret raw medical data." *Howell v. Kijakazi*, No. 20-CV-2517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022) (citing *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)); *see also Nyguen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). Courts consider MRIs to be raw medical data. *See Howell*, 2022 WL 2759090, at *7 (citing *Mack v. Saul*, No. 1:18-CV-01287-DAD-BAM, 2020 WL 2731032, at *2 (E.D. Cal. May 26, 2020)). Despite the inability to interpret raw medical evidence, it is still the ALJ's responsibility to assess a claimant's RFC based on the relevant evidence in the record. 20 C.F.R. § 404.1546(c); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that that it is the responsibility of the ALJ, not the claimant's physician, to determine the residual functional capacity.").

Plaintiff seemingly argues that the ALJ erred by interpreting an MRI. ECF No. 11 at 7. However, Plaintiff does not explain where in the decision the ALJ erroneously interpreted the MRI—or how he allegedly did so. *See id.* The Commissioner argued that the ALJ did not err in addressing the medical evidence because he was allowed to resolve ambiguities in such evidence. ECF No. 13 at 14. But the Commissioner did not explain what constituted the

---

[2] While the Court broadly considers this in evaluating whether the ALJ's finding that Plaintiff could perform light work with limitations was supported by substantial evidence, it does not specifically address this argument because Plaintiff does not contend otherwise.

7

supposed ambiguity. Accordingly, the Court does its best to address this vague argument.

Here, based on Plaintiff's explanation of the MRI in her brief,[3] the Court believes that she takes issue with the ALJ's following assessments:

> As discussed in finding 4, in a report for a July 11, 2019 MRI of the claimant's lumbar spine, revealed d grade 1 anterolisthesis L4-5 and featuring a right central disc extrusion and severe spinal stenosis to 5 mm and severe right foraminal stenosis with impingement of the exiting right L4 nerve root, and degenerative disc disease at the L3-L4 level resulting in mild left foraminal stenosis and contact of the exiting L3 nerve root. (Ex. 9F, p. 5-6). That MRI was read by Victor Fong, MD, and interpreted by Gordon Chu, MD. (Ex. 9F, p. 6). April 4, 2019 images of the claimant's cervical spine revealed degenerative osteoarthritic changes at the C5, C6, and C7 levels, with degenerative disc disease at the C5-C6 and C6-C7 levels, with neural foraminal narrowing. (Ex. 6F, p. 3).

AR 29.

> In that report, Dr. Wu also noted that the claimant's then most recent MRIs were dated November 15, 2021. (Ex. 37F, p. 9). She noted that the MRI revealed degenerative disc disease at the C5-C6 and moderate bilateral foraminal stenosis, as well as degenerative disc disease at the C6-C7 level. (Ex. 37F, p. 9). With respect to the claimant's lumbar spine, an MRI revealed degenerative disc disease with central stenosis and a mass effect of the right 4th nerve. (Ex. 37F, p. 9).

AR 30. Far from interpreting the MRIs, the ALJ's decision follows—almost word for word—the language in the medical evidence he cites. *See* AR 996, 889. He does not go on to interpret these MRIs into functional terms either, as Plaintiff contends. *See* ECF No. 11 at 7. So, without evidence in the decision showing that the ALJ actually interpreted the MRI results, and absent specific arguments from Plaintiff saying as much, the Court finds that the ALJ did not interpret raw medical data, let alone improperly do so.

---

[3] Plaintiff confusingly states, without more:

> The MRI of the lumbar spine documented anterolisthesis and right central disc extrusion and severe spinal stenosis to 5mm and severe right foraminal stenosis with impingement of the existing L4 nerve root, and degenerative disc disease of L3-L4 level, resulting in mild left foraminal stenosis and contact of the existing L3 nerve root. AR 995-996. The MRI of the cervical spine documented degenerative changes at C5, C6 and C7 with degenerative disc disease at C5-6 and C6-7 levels. AR 889[.]

ECF No. 11 at 7.

**b. The ALJ did not improperly reject the medical opinions of Drs. Pak and Nasrabadi.**

The agency revised its rules for evaluating medical evidence in 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. at 62,572. In revising the rules, the agency noted that reviewing courts "focused more on whether [ALJs] sufficiently articulated the weight [they] gave treating source opinions rather than on whether substantial evidence supports the Commissioner's final decision." *Id.* The agency further explained that the substantial evidence standard of review was intended to be highly deferential. *Id.* The Ninth Circuit found that these revised rules were irreconcilable with its caselaw requiring ALJs to provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022)

Under the revised rules, the ALJ need only address the supportability and consistency of the medical opinion. 20 C.F.R. § 416.920c(b)(2). Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(1). Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2). Still, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787. As discussed above, under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Plaintiff argues that the ALJ improperly rejected the opinions of the state-agency physicians, Drs. Pak and Nasrabadi, by not providing any specific reasons to reject their opinions. ECF No. 11 at 7. Specifically, Plaintiff argues that these opinions were supported by

9

the opinion of treating physician, Dr. Wu. *Id.* at 8. The Commissioner responded that the ALJ provided meaningful analysis that the opinions of Drs. Pak and Nasrabadi were neither supported nor consistent. ECF No. 13 at 9–15. Specifically, the Commissioner argued that Dr. Wu's medical opinion was unsupported by her own treatment notes and not consistent with Plaintiff's pain-management records. *Id.* at 10–11. The Commissioner further argued that the Court can reasonably infer that their opinions were unsupported and were inconsistent with subsequent exam findings. *Id.* at 12–13.

The ALJ found the opinions of Drs. Pak and Nasrabadi to be somewhat persuasive. AR 32. The ALJ noted that Dr. Pak opined that Plaintiff was limited to less than sedentary work and that "she could sit for six hours, could not climb ladders, ropes, and scaffolds, could frequently balance, could occasionally stoop, knee, crouch, and crawl, could occasionally reach overhead; and needed to avoid concentrated exposure to vibration and even moderate exposure to hazards." *Id.* The ALJ then stated: "For the reasons cited above, including the claimant's pain management treatment records discussed above, the undersigned finds that the claimant has reasonably been limited to work at a light level of exertion with the limitations provided in the residual functional capacity adopted above." *Id.* As to Dr. Nasrabadi, the ALJ found his opinion regarding sedentary work unpersuasive for the same reasons as Dr. Pak. *Id.* The ALJ stated: "For the reasons cited above, the undersigned finds that the claimant has reasonably been limited to work within the residual functional capacity adopted above." *Id.*[4]

Regarding the opinion of Dr. Wu, the ALJ noted that Dr. Wu estimated that Plaintiff "could walk for half a block and sit or stand for 15 minutes at a time" and "could sit for a total of two hours a day and stand/walk for less than two hours a day." *Id.* However, the ALJ found that

---

[4] The ALJ did not use the words "supportability" and "consistency" when considering the medical opinions of Drs. Pak and Nasrabadi. While ALJs should "endeavor to use these two terms of art," the Court will not find that the ALJ here erred merely because he did not use those terms. *See Woods v. Kijakazi*, 32 F.4th 785, 793, n.4 (9th Cir. 2022). The Court believes such a finding would contradict the policy behind the revised rules, which seeks to focus the Court's review upon whether the ALJ's evaluation of a medical opinion is supported by substantial evidence. *Id.* at 791.

these opinions were not consistent with Plaintiff's pain-management-treatment records nor supported by Dr. Wu's treatment records. AR 33. The ALJ concluded that: "For the reasons discussed above, including Dr. Kelner's October 14, 2021, report, the undersigned does not find that the claimant's medical records show that she has been unable to perform work at a light level of exertion." *Id.*

The pain-management-treatment records seemingly refer to the records from the Western State Pain Institute. AR 21. These include treatment notes from ARNP Virk, who noted that the claimant reported that her pain was mostly in her back and neck. *Id.* ARNP Virk also noted that Plaintiff had a slight limitation in range of motion in her left shoulder, could not squeeze a ball with her left hand, and could not perform a side-to-side motion or rotate her waist without pain. AR 30. However, he stated that the claimant appeared to be very fit and believed that he could manage her pain with opioids. *Id.*

The ALJ also discussed Plaintiff's appointment with Dr. Kelner. AR 33. The ALJ noted that, at that visit, she reported pain when "getting in out of a vehicle, going from a standing to sitting position, being in a position for a prolonged period of time, and lifting heavier objects." *Id.* The ALJ stated that his RFC determination "accommodates her chronic pain by providing for simple work at a light level of exertion." *Id.*

Additional evidence the ALJ considered includes the opinions of Drs. Blum, Chopra, and Hijazi. Dr. Blum noted that Plaintiff had been treated for her cerebral aneurysm (without rupture) and was "doing well," with only "slight headache[s] sometimes." AR 27. Dr. Chopra reported that, contrary to Plaintiff's complaints of short-term memory loss, she had "normal repetition, short-term recall, and normal remote memory." *Id.* (citing AR 1083). He also noted that Plaintiff's headaches had resolved. *Id.* Finally, the ALJ considered Dr. Chopra's opinion regarding a 2020 EMG, as well as notes from Dr. Hijazi, a hand surgeon, that showed Plaintiff had left carpal tunnel syndrome. AR 28. To accommodate this impairment, the ALJ limited Plaintiff's RFC to "work that does not require more than frequent handling and fingering with the left non-dominant upper extremity, and that does not require more than occasional overhead

reaching with that extremity." *Id.*

In sum, the ALJ's finding that Plaintiff had an RFC of light work with limitations was supported by substantial evidence. Although Drs. Pak and Nasrabadi opined that Plaintiff was limited to sedentary work, the ALJ found the medical opinions from ARNP Virk, and Drs. Kelner, Blum, Chopra, and Hijazi showed that specific limitations could accommodate Plaintiff's impairments. Moreover, the ALJ found that Dr. Wu's opinion regarding sedentary work was not consistent with her own treatment records and not supported by other medical evidence. AR 33.

Therefore, although the ALJ could have more clearly addressed the factors of supportability and consistency with regards to Drs. Pak and Nasrabadi, the ALJ's determination that their opinions were somewhat persuasive is supported by substantial evidence. The ALJ discussed in detail Plaintiff's testimony regarding her impairments and subjective pain, her treatment for those impairments and pain, and numerous doctors' notes regarding her specific impairments and pain. He found that an RFC of light work with substantial limitations, as opposed to a blanket RFC of sedentary work, could accommodate Plaintiff's specific impairments and chronic pain.

As noted above, the ALJ adopted limitations that aligned with evidence in the record. For example, the ALJ found that Plaintiff was limited to "work that does not require more than frequent handling and fingering with the left non-dominant upper extremity, and that does not require more than occasional overhead reaching with that extremity" to account for her left carpal tunnel syndrome. AR 28. He further found that a limitation of simple work accommodated the Plaintiff's treatment with pain medication. AR 30. The ALJ also found limitations consistent with Dr. Pak's opinion that Plaintiff "could sit for six hours, could not climb ladders, ropes, and scaffolds, could frequently balance, could occasionally stoop, knee, crouch, and crawl, could occasionally reach overhead; and needed to avoid concentrated exposure to vibration and even moderate exposure to hazards." AR 32; *see* AR 25. In sum, the ALJ's finding is supported by inferences reasonably drawn from the record, and it must be upheld. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004).

**B. The ALJ erred in finding that Plaintiff could perform the jobs of cashier, sales attendant, and fast-foods worker.**

At step five, the ALJ found that there were jobs in significant numbers in the national economy that Plaintiff could perform given her RFC. AR 35. The vocational expert identified three such jobs at the hearing: cashier, sales attendant, and fast-foods worker. *Id.* First, Plaintiff argues that she cannot perform the jobs of cashier and sales attendant because they are not simple. ECF No. 11 at 9. Second, Plaintiff argues that she cannot perform the job of fast-foods worker because it requires constant handling. *Id.* at 11. The Commissioner did not contest that the jobs of cashier and sales attendant were not simple, but it did argue that "any error in including a position at step five is harmless if the other jobs at step five survive scrutiny." ECF No. 13 at 17 (citing *Stiffler v. O'Mally*, No.22-55906, 2024 WL 2715884, at *5 n.1 (9th Cir. May 28, 2024)). The Commissioner argues that the Court can affirm the decision because the job of fast-foods worker is consistent with the RFC the ALJ assessed. *Id.* at 18.

**a. Plaintiff's RFC of "simple" work prevented her from performing the jobs of cashier and sales attendant.**

The jobs of cashier and sales attendant require level-three reasoning. DOT, 211.462-010 (Cashier); DOT, 299.677-010 (Sales Attendant). The ALJ found that Plaintiff's RFC limited her to carrying out "simple instructions" and "simple work-related decisions." AR 25. The Ninth Circuit has held that "a limitation to simple, routine, or repetitive work is inconsistent with Reasoning Level 3." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017); *see also Zavalin v. Colvin*, 778 F.3d 842, 846–48 (9th Cir. 2015). Based on this, Plaintiff argues that she could not perform the jobs of cashier and sales attendant. ECF No. 11 at 9. The Commissioner does not dispute this argument but seemingly argues that the ALJ's error was harmless because Plaintiff could perform the job of fast-foods worker. ECF No. 13 at 18. The Court agrees with Plaintiff that, due to her RFC of simple work, she could not perform the jobs of cashier and sales attendant. Therefore, the Court turns to whether Plaintiff could perform the job of fast-foods worker to determine if the ALJ's error was harmless.

13

**b. The ALJ erred by not reconciling a conflict between the VE's testimony and the DOT's definition of fast-foods worker.**

When determining whether a plaintiff can perform other work despite her limitations, the ALJ may rely on an impartial vocational expert ("VE"). *Gutierrez v. Colvin*, 844 F.3d 804, 806–07 (9th Cir. 2016). "If the [VE's] opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Id.* This obligation is only triggered if the conflict is "obvious or apparent." *Id.* at 808. "This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Id.*

Here, Plaintiff alleges two conflicts between the VE's testimony and the DOT's definition of fast-foods worker. ECF No. 11 at 10–11. First, Plaintiff argues that this job requires *constant* handling, which is inconsistent with her limitation of "*frequent* handling and fingering with her left upper extremity." *Id.* at 11; AR 25. Second, Plaintiff argues that this job requires constant reaching, which is inconsistent with her limitation of "zero overhead reaching" and "no bilateral overhead reaching." ECF No. 11 at 11.[5] The Commissioner responded that the VE reasonably explained why she departed from the DOT's definition of fast-foods worker in assessing that Plaintiff could perform that job. ECF No. 13 at 18. Specifically, the Commissioner argues that the VE stated, based on her extensive experience, that the job of fast-foods worker does not require more than occasional overhead reaching. *Id.* The Commissioner did not address handling.

---

[5] The disagrees with this statement. The ALJ never limited Plaintiff to "zero overhead reaching" and "no bilateral overhead reaching." In the decision, the ALJ stated that Plaintiff is limited to "occasional overhead reaching with her left non-dominant upper extremity." AR 25. In other words, the ALJ assessed an RFC in which Plaintiff was limited to occasional overhead reaching with her left arm and not limited to overhead reaching with her right arm. *See id.* Therefore, to the extent Plaintiff argues that her RFC is inconsistent with the job of fast-foods worker due to overhead reaching, the Court rejects such argument.

Regarding the first conflict (frequent versus constant handling), the Court finds that the ALJ erred by not asking the VE to reconcile the inconsistency. In *Lamear v. Berryhill*, the Ninth Circuit considered this (almost) exact issue. 865 F.3d 1201 (9th Cir. 2017). In that case, the plaintiff could only "occasionally" handle, finger, and reach overhead with his left arm and hand. *Id.* at 1203. The VE testified that the plaintiff could work as office helper, mail clerk, or parking-lot cashier, even though the DOT stated that these jobs required "frequent" handling, fingering, and reaching. *Id.* Therefore, the issue before the court was whether this conflict was an obvious or apparent conflict that required the ALJ to reconcile it. *Id.* at 1204.

In holding that this conflict did require the ALJ to reconcile it, the Ninth Circuit stated that "[t]he DOT's lengthy descriptions for these jobs strongly suggest that it is likely and foreseeable that using both hands would be necessary to perform 'essential, integral, or expected' tasks in an acceptable and efficient manner." *Id.* at 1205. The court further explained that it could not "determine from this record, the DOT, or our common experience whether the jobs in question require both hands, so we cannot say the ALJ's failure to inquire was harmless." *Id.* at 1206.

Similarly here, the ALJ assessed an RFC of *frequent* handling on Plaintiff's left side only. AR 25. The VE testified that Plaintiff could perform the job of fast-foods worker, which requires *constant* handling. AR 35; DOT, 311.472-010 (Fast-foods Worker). The DOT's description of this job[6] strongly suggests that it is likely and foreseeable that using both hands would be necessary to perform 'essential, integral, or expected' tasks in an acceptable and efficient manner. Moreover, for anyone who has been to a fast-foods establishment, it is easy to see that the workers are constantly handling items, whether that be food, cups, machines, and the like. Thus, the conflict between the VE's testimony that Plaintiff could perform the job of a fast-foods

---

[6] The DOT's description of the job states that a fast-foods worker: "Serves cold drinks, using drink-dispensing machine, or frozen milk drinks or desserts, using milkshake or frozen custard machine. Makes and serves hot beverages, using automatic water heater or coffeemaker. Presses lids onto beverages and places beverages on serving tray or in takeout container." DOT, 311.472-010 (Fast-foods Worker).

worker with an RFC of frequent handling on her left side and the DOT's definition that this job required constant handling was an apparent conflict that the ALJ was required to reconcile through questioning of the VE. The ALJ did not do so. So, like the Ninth Circuit, this Court cannot determine from the record, the DOT, or common experience whether the job of fast-foods worker requires constant handling with both hands. Therefore, the Court must find that the ALJ erred, and that such error was not harmless.

Regarding the second conflict (constant versus occasional overhead reaching), the Court reaches a different conclusion. Here, unlike above, the VE specifically addressed this conflict at the hearing. AR 123. The VE stated that "reaching from one extremity" was not in the DOT, but that her testimony that Plaintiff could still perform that job was "based upon [her] experience placing . . . people with disabilities into jobs for the last 40 years, going to work sites, talking to employers and employees and you know, observing them performing work." *Id.* Additionally, the ALJ specifically noted this testimony and accepted it in his decision. AR 36. Therefore, the ALJ did not err regarding this conflict.

In sum, Plaintiff could not perform the jobs of cashier and sales attendant due to their level of reasoning, and the ALJ did not reconcile the conflict regarding whether Plaintiff could perform the job of fast-foods worker. Therefore, the Court must remand the matter. *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). However, the Court will not remand to award benefits because the record has not been fully developed, as explained above. *See id.*

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's motion for reversal, or in the alternative, remand (ECF No. 11) is GRANTED IN PART AND DENIED IN PART. The Court denies Plaintiff's motion as to her request for an award of benefits but grants it as to her alternative request for remand.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment in favor of Plaintiff and close this case.

DATED this 23rd day of September, 2024.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE